UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
SIERRA CLUB, INC.,

                                  Plaintiff,                      **MEMORANDUM**
                                                                           **AND OPINION**
          -against-                                                       CV 16-4960 (AYS)

CON-STRUX, LLC., and MARK BRETZ,

                                  Defendants.
---------------------------------------------------------------------X
**SHIELDS, Magistrate Judge:**

      Plaintiff Sierra Club, LLC ("Plaintiff" or "Sierra Club") commenced this action against Con-Strux, LLC ("Construx" or the "Company") and Marc Bretz ("Bretz") (collectively "Defendants") seeking declaratory and injunctive relief, as well as civil penalties, pursuant to the Clean Water Act, 33 U.S.C. § 1251(a) (the "CWA" or the "Act"). Presently before the Court is Defendants' motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim.

## BACKGROUND

I.     Factual Background

      The facts considered herein are drawn from the Complaint, as well as affidavits and documents submitted by the parties that they have agreed to be considered in connection with this motion.

      A.     The Parties

      Sierra Club is a not-for-profit environmental organization that is headquartered in Oakland, California. It has 67 chapters nationwide, including a group located within this District. Docket Entry ("DE") 1 ¶ 8. Plaintiff's self-described mission is to "explore, enjoy, and protect

the planet; to practice and promote responsible use of the earth's ecosystems and resources, to educate and enlist humanity to protect and restore the quality of the natural and human environment; and to use all lawful means to carry out these objectives." Id. Among other activities, Sierra Club seeks to achieve its mission via participation in legal and administrative forums.

Construx is the operator facilities located in Westbury and Lindenhurst, New York that recycle demolished concrete, asphalt and masonry materials. See Affidavit of Michael J. Posillico dated May 18, 2017, DE 24-1 (hereinafter "Posillico Aff") ¶¶ 4; 7. The Company is engaged, at both facilities, in the business of recycling what the Company refers to as "recognizable uncontaminated concrete, asphalt pavement, brick, soil or rock," known by the acronym "RUCARBS." Id. Construx crushes these materials into different sizes for wholesale and re-use as road base, drainage stone, or as an aggregate replacement for certain applications. Id. ¶ 7; see Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss, DE 22 at 8 (reprinting the "About Us" page of the Construx website). Individual Defendant Bretz is a manager at the Construx Lindenhurst facility, the activities of which are the subject of this action.

Construx stresses that the materials taken in at its facilities are subject to inspection so that only RUCARBS are accepted for crushing and later resale and re-use. Posillico Aff. DE 24-1 ¶ 7. The Company notes that the aggregate it markets is desirable to the building industry as a "viable, clean, and less expensive alternative for construction applications . . . ." Posillico Aff. DE 24-1 ¶ 8. Construx has referred to itself as being engaged in "recycling." See Declaration of Nicholas Tapert, Exh. 1 (reprint of the "About Us" page of Construx website), DE 22-1. It notes

2

in particular, the "benefit of recycling RUCARBS as diverting otherwise useless demolition debris from landfills." Id.

      B.      Storm Water Runoff and Waterway Pollution

Storm water runoff is a known source of waterway pollution that is at the core of certain regulations promulgated pursuant to the CWA, and this lawsuit. The term refers to the path of rainwater and melted snow appearing on hard surfaces (such as paved roads, driveways and roofs) that is not absorbed into the ground. Such runoff may thereafter flow into natural bodies of waters such as rivers and streams. Because many hard surfaces from which storm waters flow contain pollutants, runoff from these areas may contain pollutants that flow into bodies of water. There is no question that storm water runoff is a significant source of pollution for New York's harbors and waterways.

II.      Statutory and Regulatory Framework

      A.      The CWA, the EPA and New York State Regulation of Storm Water Runoff

The CWA was enacted to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. §1251(a). Among the concerns addressed by the CWA is the issue of pollution attributable to storm water runoff. Not every incident of storm water runoff is subject to regulation under the Act. Indeed, any such law would conceivably require regulatory compliance by every home with a flat surface, such as a flat roof or paved driveway. Instead, and importantly, the CWA regulates only storm water runoff associated with certain enumerated activities as set forth in the Act, and its implementing regulations. See generally 33 U.S.C. §1342; 33 U.S.C. §1311(a) (noting illegality of, inter alia, the discharge of any pollutant except as in compliance with the permitting process set forth in Section 33 U.S.C. 1342).

3

An entity that is subject to the CWA's runoff regulation can comply with the Act either by refraining completely from any storm water discharge, or by ensuring that any such discharge complies with the Act's permitting process. That permitting process is known as the National Pollutant Discharge Elimination System (the "NPDES"). The NPDES allows the Administrator of the Environmental Protection Agency (the "EPA"), or an approved State agency to issue permits setting forth conditions for the discharge of storm water pollutants. See 33 U.S.C. §1342(a). State permitting programs are required to conform to the minimum procedural and substantive regulatory requirements promulgated by the EPA. See 33 U.S.C. §1314(i).

While not all states have elected to form their own permitting NPDES agencies, the State of New York has received approval for the New York State Department of Environmental Conservation (the "DEC") to act as the agency responsible for carrying out the CWA NPDES permitting process. See EPA Industrial Stormwater Fact Sheet. DE 25-3 at 1. The DEC implements this process through its State Pollutant Discharge Elimination Program the ("SPDES"). Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York, 273 F.3d 481, 486 (2d Cir. 2001) ("In New York, the NPDES program is administered by NYSDEC and referred to as the State Pollution Discharge Elimination System ('SPDES')"). A New York State issued SPDES permit "has the same force as an NPDES permit issued by the EPA." Peconic Baykeeper, Inc. v. Suffolk County, 600 F.3d 180, 185 (2d Cir. 2010).

The New York State SPDES program reviews activities to determine whether or not they are required to obtain either a "Multi-Sector General Permit" or an individual "NPDES Permit."[1] An individual permit applies to a single facility, in one location, possessing unique discharge

---

[1] See generally http://www.dec.ny.gov/chemical/67777.html.

characteristics and other factors, while a Multi-Sector General Permit applies to a class of dischargers which involve similar operations or pollutants. Among those "sectors" included in the Multi-Sector General Permit is sector "N," which is entitled "Scrap Recycling Facilities." Declaration of Nicholas Tapert, Exh. 10, DE 22-11. Plaintiff here alleges that Construx is a Sector N industrial facility which, as discussed below, is required to obtain a Multi-Sector General Permit.

      B.      Facilities Required to Obtain Discharge Permits:
                 Industrial Activity, Recycling and Relevant SIC Codes

EPA regulations (with which the DEC must comply via its SPDES program) identify the types of activities that are required by the CWA to obtain permits for storm water runoff, and which must therefore discharge run off water only in accord with a permit. 33 U.S.C. §§1311(a); 1342. Such regulated facilities are required either to refrain from any discharge, or to obtain permits to discharge storm water in accordance with the CWA. Transcript of Oral Argument held November 9, 2017 (hereinafter "Argument"), DE 29 at 10:23-11:1. Relevant here are those facilities that are engaged in "industrial activity." See 40 CFR §122.26(a)(1)(ii).

Facilities engaged in "industrial activity" are defined by the EPA as those engaged in activities defined in 40 CFR 122.26(b)(14)(i-ix). Several of these facilities are defined by reference to "standard industrial classification" ("SIC") Codes. These codes are a series of four digit codes created by the United States government in 1937 to categorize businesses. https://www.census.gov/history/pdf/sichistory1957.pdf. They refer to different types of "establishments," which are economic units, generally at a single physical location where a business is located and services are performed. See Declaration of Nicholas Tapert, Exh. 9, DE

22-10. The current version of the four digit codes appear in the "SIC Manual" published in 1987 by the Office of Management and Budget.

The parties agree that relevant here are the SIC Codes referenced in 20 CFR 122.26(b)(14)(vi), which are described as facilities involved in "the <u>recycling</u> of materials, including metal scrapyards, battery reclaimers, salvage yards, and automobile junkyards." 20 CFR 122.26(b)(14)(vi) (emphasis added). These "recycling" facilities are referred to in the EPA regulations as those "including but limited to those as Standard Industrial Classification 5015 and 5093." SIC Code 5015, which is not relevant here, refers to establishments engaged primarily in dismantling motor vehicles for scrap.

The Court notes that the relevant Federal regulation states that the facilities covered are "including *but limited to*" those within the stated SIC codes. It does not state "including but *not* limited to." This language, while inartful, may have been employed intentionally, or may be a typographical error. In any event, the parties here agree that this language does not change the analysis here, as the question presented is whether or not Defendants' business constitutes industrial activity within the meaning of SIC 5093.

SIC Code 5093 is entitled "Scrap and Waste Materials" and encompasses "establishments primarily engaged in engaged in assembling, breaking up, sorting, and wholesale distribution of scrap and waste materials." SIC Code 5093 is specifically cross-referenced in the New York State Multi-Sector General Permit as describing those facilities falling within Sector N industrial activity. D'Ambrosio Aff. Exh. 4, DE 24-16. As discussed more fully below, those industries

include auto wreckers engaged in dismantling automobiles for scrap, as well as iron and steel scrap, metal waste, oil, rags, rubber scrap, textile waste and wiping rags.[2]

SIC Code 5032, which is not listed in the EPA regulation defining industrial activity, is the code that Defendants claim properly characterizes their business. See Posillico Aff., DE 24-1 ¶ 27. That SIC Code is entitled "Brick, Stone, and Related Construction Materials." It encompasses establishments primarily engaged in the wholesale distribution of stone, cement, lime, construction sand, and gravel; brick; asphalt and concrete mixtures; and concrete, stone, and structural clay products, including aggregate, asphalt mixtures, cement and paving mixtures.[3]

III.    Defendants' New York State Registration and Their Interaction with the DEC

Defendants have submitted a factual affidavit detailing Construx's filings and interaction with the DEC with respect to the facility at issue in this matter (the "Lindenhurst Facility") and a second facility located in Westbury (the "Westbury Facility"). That affidavit also recounts the DEC's communication with Defendants, and Plaintiff's counsel with respect to the Lindenhurst Facility.

First, Defendants explain that they have recently reviewed the way in which both if its facilities are registered with the DEC. While the Westbury Facility is stated to be properly registered as accepting only RUCARBS, the Lindenhurst Facility – at issue here – is stated to have been incorrectly registered as accepting "construction and demolition debris." Posillico Aff., DE 24-1 ¶ 6. Defendants state that they have contacted the DEC to correct the error, and

---

[2] https://www.osha.gov/pls/imis/sic_manual.display?id=993&tab=description
[3] https://www.osha.gov/pls/imis/sic_manual.display?id=966&tab=description

that it is their understanding that the agency's website will be properly updated to reflect this correction.

Defendants' affidavit states further that as a facility that accepts only RUCARBS it is properly characterized as a "beneficial use facility" within the meaning of 6 NYCRR 360-1.15(b)(11).[4] As such, Construx is a "Part 360 Registered Facility" that is not required to obtain a solid waste permit. Id. ¶ 9. Additionally, Defendants detail conversations they state to have taken place with respect to whether the DEC considers Construx to be involved in industrial activity. According to Construx, the DEC has informed the company that as a Part 360 Registered Facility, the Lindenhurst Facility is not a Sector N industrial facility with a SIC Code of 5093, but that the proper classification is SIC Code 5032. It is therefore argued that it is the opinion of the DEC, as set forth in the Posillico Affidavit (and by counsel at oral argument), that Construx is not required to obtain a storm water runoff permit. Id. ¶ 10; Oral Argument at 29:21-25.

Defendants also note that Plaintiff's intent to file suit under the CWA was communicated to the DEC. That agency visited the Construx Lindenhurst Facility on February 18, 2016 for an unannounced inspection. Id. ¶ 20. Defendants attach to their motion papers a letter to Plaintiff's counsel from Thomas Berkman, the DEC Deputy Commissioner and General Counsel, detailing the findings of that inspection, and responding to Plaintiff's notice of intention to file this lawsuit. DE 24-1, Exhibit 9. That letter states that the only storm water runoff from Defendants' facility is discharged into on-site leaching pools, is contained on site, and that there is no

---

[4] The Court notes that 6 NYCRR 360-1.15 has recently been repealed; however, such change has no bearing on this Court's analysis.

discharge to surface waters." Id. ¶ 21. Accordingly, the letter states the finding of the DEC that no storm water runoff permit is required. Id.

IV.     Prior Proceedings

Plaintiff began its CWA citizen enforcement proceedings on January 21, 2016, when it gave Defendants, the EPA and the Commissioner of the DEC notice of its intent to file a citizen lawsuit pursuant to Section 505(a) of the CWA, 33 U.S.C. §1365(a). DE 1-3. As described above, DEC responded to Plaintiff's notice of intent with a letter detailing findings reached after its February 18, 2016 unannounced informal inspection. In September of 2016, well after expiration of the 60 day statutory waiting period, see 33 U.S.C. §1365(b)(1), this lawsuit was commenced. The parties thereafter consented to the jurisdiction of the Court for all purposes. DE 16. The presently pending motion was fully briefed on July 18, 2017, DE 21-26. Oral argument thereon was held, and decision was reserved on November 9, 2017. DE 28.

V.      The Parties' Positions

The crux of this motion is whether or not Construx is properly categorized as an industrial facility within the meaning of the CWA, and is therefore required to obtain a storm water runoff permit. It is Plaintiff's position that the business of Construx is properly categorized as falling within SIC Code 5093. Defendants, on the other hand, argue that Construx is not engaged in business within the meaning of SIC 5093, but that its business is properly classified as falling within SIC Code 5032, a code that is not within EPA's definition of "industrial activity."

In support of its characterization of Defendants' business, Plaintiff relies heavily on the fact that the EPA's "industrial activity" regulation uses the term "recycling" -- a term used by Defendants when describing their business. Defendants, on the other hand, attach little

9

significance to the fact that they hold their business out as engaged in "recycling." Instead, they argue that the determinative facts are the nature of the materials taken in by Construx, and the fact that their facilities do nothing more that crush such RUCARBS for sale and re-use. Since the materials crushed are nothing more than clean and uncontaminated RUCARBS, Defendants argue that they are not engaged in industrial activity subject to the CWA's storm water runoff regulation.

DISCUSSION

I. <u>Legal Principles</u>

    A. <u>The Present Motion and Rule 12(b)(6)</u>

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678-79 (2009) (quoting, <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)); <u>see also</u> <u>Arista Records, LLC v. Doe 3</u>, 604 F.3d 110, 119–20 (2d Cir. 2010). In deciding a motion to dismiss, "a court must 'accept all allegations in the Complaint as true and draw all inferences in the non-moving party's favor.'" <u>U.S. ex rel. Siegel v. Roche Diagnostics Corp.</u>, 988 F. Supp. 2d 341, 343 (E.D.N.Y. 2013) (quoting <u>LaFaro v. New York Cardiothoracic Grp., PLLC</u>, 570 F.3d 471, 475 (2d Cir. 2009)).

The consideration of documents outside of the pleadings are, with certain well-established exceptions, not generally considered in the context of motions to dismiss. <u>See</u> <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 152-53 (2d Cir. 2002) (setting forth categories of documents properly considered in context of motion to dismiss). The parties in this matter have, however, specifically agreed to the consideration of all affidavits and documents submitted. <u>See</u> DE 20 (noting the parties' agreement that the matter presented would be "best presented to the

10

Court as a motion to dismiss pursuant to Rule 12(b)(6), with the use of affidavits allowed to support the briefing"). The parties have also agreed that the present motion to dismiss would be limited to a single, potentially dispositive issue, i.e., whether Defendants' business constitutes "industrial activity" within the meaning of the CWA such that Defendants must comply with the Act's requirements with respect to the regulation of storm water runoff. The motion herein is interposed without prejudice to the raising of additional issues in the event that this motion does not dispose of this case.

B.   Relevance of the Opinion of the DEC to the CWA

Before turning to apply the CWA, the Court discusses the relevance, if any, of the fact that Construx is properly registered with the DEC as a RUCARBS facility that is not required to obtain a New York State solid waste permit, and the opinion of that State agency with respect to whether or not Construx is required to obtain a storm water runoff permit.

As the permitting agency, it would seem that the opinion of the DEC might be binding, or at least entitled to deference, when determining whether or not a storm water runoff permit is required. Indeed, it would seem that Construx has done all it can to comply with the CWA by seeking the opinion of the State permitting authority. When that authority declined to require a permit, it could be argued that the matter is settled. That is not, however, the law with respect to enforcement of the CWA.

First, the fact that Construx complies with a New York State registration requirement does not translate into a finding that such registration necessarily demonstrates compliance with CWA storm water regulations. Additionally, with respect to CWA compliance, it is that Act that governs, and not State regulatory law. As noted, New York State's storm water program must be no less protective of the environment that that dictated by the CWA. See 40 CFR §123.25(a)(9)

11

(state programs must be administered "in conformance with," inter alia, the storm water discharge provisions of the CWA).

Importantly, citizen groups such as the Sierra Club are empowered to pursue citizen actions to enforce the provisions of the CWA. 33 U.S.C. § 1365(a)(1); see No Spray Coalition, Inc. v. City of New York, 351 F.3d 602, 605 (2d Cir. 2003). Additionally, this Court is not bound to hold that Construx is in compliance with the CWA by virtue of adherence to a state regulatory scheme, or, indeed by the opinion of the DEC. Peconic Baykeeper, 600 F.3d at 184; Soundkeeper, Inc. v. A & B Auto Salvage, Inc., 19 F.Supp.3d 426, 433-35 (D. Conn. 2014); accord San Francisco Baykeeper, v. Cargill Salt Div., 481 F.3d 700, 706 (9th Cir. 2007). Even if such deference were required, there is no clear finding on the record herein, that the business of Construx is properly categorized as within SIC Code 5032, and not within Code 5093. Here, the only such reference to these findings is in the form of a conversation alleged to have occurred between a DEC representative and Defense counsel. While this Court in no way implies the falsity of any representations made by counsel, a clear DEC statement as to the proper categorization of Construx is not before the Court. In any event, given the law referred to above, it is for this Court to determine, in the first instance, whether or not Construx is engaged in industrial activity under the CWA, and is therefore required to obtain a storm water runoff permit.

II.     Disposition of the Motion

The parties agree that the issue before the Court is whether Construx is engaged in "industrial activity" within the meaning of the CWA. Put simply, if Defendants are engaged in such activity, they are required to comply with the CWA, and must either contain all storm water runoff, or obtain a permit for the discharge thereof. If they do not engage in industrial activity, no

such compliance is required, and this case is properly subject to dismissal. Argument, DE 29 at 11:2-6.

The parties also agree that the "industrial activity" question is to be decided by reference as to whether the business of Construx is properly classified as falling within SIC Code 5093. As noted, that code is referenced in the section of the CFR that includes certain recycling within the definition of covered industrial activity. Clearly, not all "recycling" is deemed to constitute industrial activity. Instead, recycling by businesses deemed to fall within SIC Code 5093 are covered by the CWA. SIC Code 5093 activities fall within the SIC "industry" description of "wholesale trade," and are described as:

> Establishments primarily engaged in assembling, breaking up, sorting, and wholesale distribution of scrap and waste materials. This industry includes auto wreckers engaged in dismantling automobiles for scrap.

https://www.osha.gov/pls/imis/sic_manual.display?id=993&tab=description;
https://siccode.com/en/siccodes/5093/scrap-and-waste-materials.

Illustrative examples of businesses covered by Section 5093 are:

- Automotive wrecking for scrap-wholesale Bag
- Bottles, waste-wholesale
- Boxes, waste-wholesale
- Fur cuttings and scraps-wholesale
- Iron and steel scrap-wholesale
- Junk and scrap, general line-wholesale
- Metal waste and scrap-wholesale
- Nonferrous metals scrap-wholesale
- Oil, waste-wholesale
- Plastics scrap-wholesale
- Rags-wholesale
- Rubber scrap-wholesale
- Scavengering-wholesale
- Scrap and waste materials-wholesale
- Textile waste-wholesale
- Wastepaper, including paper recycling-wholesale
- Wiping rags, including washing and reconditioning-wholesale

Id.

SIC Code 5032, which Defendants argue more properly characterize their business, is not covered by the industrial activity definition of the CWA. Like Code 5093 businesses, those falling within Code 5032 are characterized as falling within the "wholesale trade" industry. Those businesses are described as:

> Establishments primarily engaged in the wholesale distribution of stone, cement, lime, construction sand, and gravel; brick (except refractory); asphalt and concrete mixtures; and concrete, stone, and structural clay products (other than refractories)

https://www.osha.gov/pls/imis/sic_manual.display?id=966&tab=description; https://siccode.com/en/siccodes/5032/brick-stone-and-related-construction-materials.

Illustrative examples of businesses covered by Section 5032 are:

- Aggregate-wholesale
- Asphalt mixtures-wholesale
- Blocks building-wholesale
- Brick, except refractory-wholesale
- Building stone-wholesale
- Cement-wholesale
- Ceramic construction materials except refractory-wholesale
- Ceramic wall and floor tile-wholesale
- Cinders-wholesale
- Clay construction materials except refractory-wholesale
- Concrete building products-wholesale
- Concrete mixtures-wholesale
- Granite building stone-wholesale
- Gravel-wholesale
- Lime except agricultural-wholesale
- Limestone-wholesale
- Marble building stone-wholesale
- Masons materials-wholesale
- Paving mixtures-wholesale
- Plaster-wholesale
- Sand, construction-wholesale
- Sewer pipe clay-wholesale
- Stone, building-wholesale
- Stone crushed or broken-wholesale
- Stucco-wholesale
- Terra cotta-wholesale

- Tile clay or other ceramic except refractory-wholesale
- Tile structural clay-wholesale

Id.

The plain language of these SIC codes supports Defendants' argument that that its business does not fall within SIC Code 5093, and also supports a finding that SIC Code 5032 is a better fit to describe their business. All agree that Construx is engaged in the business of crushing materials such as stone, brick, asphalt and concrete to create an aggregate building material. These terms (stone, brick, asphalt, concrete and aggregate) are all specific terms that appear in the definition of SIC Code 5032, but not in the definition of SIC Code 5093 businesses. Instead, those businesses are described by terms such as automotive waste, scrap, oil and wiping rags -- terms that plainly do not reflect the business in which Construx is engaged. Indeed, Defendants' business reflects much less the scrap and waste materials referred to in SIC Code 5093, and much more the brick and stone aggregate materials referred to explicitly in SIC Code 5032. Thus, the plain language of the CWA, and the SIC Codes to which it refers compels the conclusion that Construx is not a Section 5093 "recycler" that is subject to that statute's storm water runoff regulation.

The Court notes also that both SIC Codes 5093 and 5032 businesses are described as falling within the "wholesale" industry classification. The use of the term "wholesale" in the SIC Code sought to be applied is accordingly not dispositive. The Court therefore rejects the notion that because Construx is engaged in both the production of aggregate by crushing brick and stone, as well as the sale thereof, its business cannot fall within SIC Code 5032. Defendants also refer to updated six digit SIC Codes. These codes, developed by private industry, are not part of the government-issued SIC Manual which has not been updated since 1987. Posillico Aff. ¶ 28,

15

DE 24-1. Plaintiff objects to consideration of these privately developed SIC codes. The Court finds it unnecessary to consider this level of SIC coding.

The Court stresses that its decision is not determined by a finding of whether or not Construx takes in "contaminated" materials. While counsel speculated at oral argument that the materials crushed by Construx may contain a variety of materials picked up in their prior incarnation as part of a road surface, the inclusion of any such materials is not necessary to a holding as to whether Construx is an industrial facility within the meaning of SIC Code 5093. Instead, the parties agree, as they must, that it is not necessary that a business deal in "contaminated" material for it to fall within the definition of SIC Code 5093. Thus, as made clear at oral argument, Plaintiff bases its case here on the argument that Construx is engaged in a "recycling" business covered by SIC Code 5093 – and not because in takes in "contaminated" or "clean" materials.

Plaintiff's proposed inclusion in the CWA definition of industrial facilities to include all "recycling" businesses is too broad to define those businesses covered by the Act. This conclusion is not only supported by the plain language of the statute (which limits covered "recycling" industrial facilities to those falling within SIC Code 5015 and 5093), but also by the statutory history preceding adoption of that definition.

In 1990, when the EPA was promulgating its final rule to implement the CWA NPDES, it considered, <u>inter</u> <u>alia</u>, its definition of the term "recycling." 55 Fed. Reg. 479909-01, 1990 WL 348331 (November 16, 1990). In connection with that promulgation, EPA noted comments to its initially proposed language in defining the term "industrial activity." That initial definition referred to those establishments "involved in *significant* recycling of materials, including metal

scrapyards, battery reclaimers, salvage yards, and automobile junkyards." 53 Fed. Reg. 49416, 49431, 1988 WL 267061 (December 7, 1988) (emphasis added).

The EPA final rule, promulgated in 1990, noted the agency's agreement with a comment that the proposed use of the term "significant" recycling was ambiguous, and set to clarify that term. 55 Fed. Reg. 48013, 1990 WL 348331 (November 16, 1990). Instead of the term "significant," the final EPA rule requires, as set forth above, a storm water runoff permit from "facilities involved in the recycling of materials, including metal scrapyards, battery reclaimers, salvage yards, and automobile junkyards, including but limited to those classified as Standard Industrial Classification 5015 and 5093." These SIC codes were stated to describe the facilities intended to be covered by the CWA regulations engaged in dismantling, breaking up, sorting, and wholesale distribution of motor vehicles and parts as well as a variety of other materials. Ultimately, EPA stated its belief that the use of the SIC codes were sufficient to "clarify" the term "significant recycling." Id. The regulatory development of the rule defining those recycling establishments subject to the CWA's storm water runoff regulation supports Defendants' contention, and this Court's position that not all establishments engaged in recycling (or using that term to describe their business) are required to engage in the permitting process. Likewise, that rule making process contradicts Plaintiff's broad proposed application of the CWA to include all facilities engaged in any way, in the business of recycling.

For all of the foregoing reasons the Court holds that Construx is not engaged in industrial activity as defined by the CWA, and is therefore not required to obtain a storm water runoff permit. As this finding is dispositive to Plaintiff's claims, Defendants' motion to dismiss is granted.

## CONCLUSION

Defendants' Motion to Dismiss, appearing as Docket Entries Nos. 21, 24, 25 and 26 herein, is granted. The Clerk of the Court is therefore directed to close the file in this matter.

Dated: Central Islip, New York
December 29, 2017

    /s/ Anne Y. Shields
Anne Y. Shields
United States Magistrate Judge